1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Ned McMonigal, III, | No. CV-15-0134-TUC-RCC (DTF) |
| Petitioner, | **REPORT AND** |
| v. | **RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner Howard McMonigal, presently incarcerated at the Arizona State Prison-Meadows Unit, in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before the Court are the Petition (Doc. 1), Respondents' Answer (Doc. 19), and a Reply (Doc. 25). The Magistrate Judge recommends the District Court, after its independent review of the record, dismiss the Petition.

### FACTUAL AND PROCEDURAL BACKGROUND

McMonigal was convicted of one count of illegally conducting an enterprise, three counts of theft, one count of possessing a motor vehicle with an altered vehicle identification number, five counts of kidnapping, three counts of sexual assault, one count of aggravated assault, and one count of possession of methamphetamine. *State v. McMonigal*, No. 2CA-CR-2009-0099, 2010 WL 1631768, at *1 (Ariz. Ct. App. Apr. 22,

2010). He was sentenced to a term of imprisonment totaling 128.75 years. (*Id.*) McMonigal's appeal was denied. (*Id.*)

McMonigal filed a Notice of Post-conviction Relief (PCR) and was appointed counsel. (Doc. 19, Ex. C.) Counsel filed a notice with the PCR court that he had not found any claims for relief to raise in a PCR petition. (*Id.*, Ex. D.) McMonigal filed a *pro se* PCR petition. (Doc. 1-3 at 45 to 1-4 at 47.) After the trial court denied relief, McMonigal filed a petition for review. (Doc. 1-4 at 49 to 1-5 at 6; Doc. 1-5 at 8-38.) The appellate court remanded one ineffective assistance of counsel (IAC) claim for an evidentiary hearing and denied the remainder of the claims. (Doc. 1-5 at 40-49.) After an evidentiary hearing, the PCR court denied relief on the remanded claim. (Doc. 1-7 at 22-25.) The court of appeals granted review but denied relief, and the Supreme Court denied review. (Doc. 1-7 at 44-47; Doc. 1-8 at 14.)

Interpreting the facts in the light most favorable to the prosecution, the court of appeals set forth the following limited factual basis for McMonigal's convictions:

> McMonigal and his codefendant brother, Ignacio Rimer, managed an extensive illegal enterprise involving trafficking in methamphetamine and stolen cars, as well as prostitution. Relevant to this appeal, he used several women to perform various duties as a part of his operation and, on several occasions, used threats, physical abuse, and rape as discipline when they did not comply with his demands. Specifically, he kidnapped, assaulted, and raped M., kidnapped and raped F. on two occasions, and kidnapped W. and L.

*McMonigal*, 2010 WL 1631768, at *1.

## DISCUSSION

McMonigal raises three claims in his Petition. Respondents contend that Claims 1, 2, and a portion of Claim 3 are procedurally defaulted; Respondents address the remainder of Claim 3 on the merits. The Court evaluates exhaustion as to all three claims before addressing the merits as warranted.

EXHAUSTION AND PROCEDURAL DEFAULT

**Principles of Exhaustion and Procedural Default**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, a pleading defendant's route to exhaust federal constitutional claims is through a PCR proceeding. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged

constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Procedural Default Analysis**

<u>Claim 1</u>

McMonigal alleges he was denied a right to grand jury, notice, a fair trial, and due process arising from substantial amendment of the indictment shortly before trial. As to Counts 13-16, related to victim Foley, McMonigal alleges he was convicted on facts entirely different than those presented to the grand jury. Liberally construing the Petition, McMonigal also alleges appellate counsel was ineffective for failing to raise this claim on appeal.

In his PCR petition, McMonigal alleged that his due process rights were violated by the amendment of the indictment. (Doc. 1-4 at 23-28.) The PCR court found all non-IAC claims precluded pursuant to Arizona Rule of Criminal Procedure 32.2(a). (Doc. 1-4 at 50.) As McMonigal points out, the PCR court did not specify which subsection of Rule 32.2(a) it relied upon to find this claim precluded. However, when McMonigal raised this claim to the appellate court (Doc. 1-5 at 22-25), the court interpreted the lower court's ruling as relying upon Rule 32.2(a)(3), which precludes claims that were waived on appeal (Doc. 1-5 at 42). This determination was well-founded because all of the non-IAC claims raised in the PCR petition could have been, but were not, raised on appeal. McMonigal acknowledged this fact in his petition for review. (Doc. 1-5 at 34-35.) He then challenged the PCR court's waiver finding, arguing that the claims were of sufficient constitutional magnitude such that any waiver had to have been knowing, voluntary, and intelligent. (Doc. 1-5 at 34-36.) The court of appeals found this argument waived because it was not sufficiently developed and supported in the petition for review as required by Arizona Rule of Criminal Procedure 32.9(c)(1). (*Id.* at 42-43.)

A habeas claim will only be barred from federal review based on a state court procedural default if the last court to consider the claim based its decision on a procedural

default. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Here, even if the PCR court's ruling was ambiguous the appellate court's ruling was not. The appellate court found the claims precluded based on Arizona Rule of Criminal Procedure 32.2(a)(3) and found McMonigal's challenge to that ruling was waived based on a state procedural rule. Therefore, this portion of the claim is procedurally barred from review in this Court.

Although McMonigal alleged in his petition for review that appellate counsel was ineffective for failing to challenge the amendment of the indictment (Doc. 1-5 at 25-26), he did not raise it in is PCR petition (Doc. 1-3 at 45 to 1-4 at 47). Therefore, the appellate court declined to address it. (Doc. 1-5 at 45 n.2.) This claim arguably is procedurally defaulted in two ways. First, because this claim was not presented to the PCR court, it was not fairly presented to the appellate court in a procedurally appropriate manner. If McMonigal were to return to state court now to litigate this claim, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this claim is technically exhausted but procedurally defaulted. Alternatively, the state court found the claim procedurally defaulted because McMonigal waived the claim by not raising it in the PCR court. *See* Ariz. R. Crim. P. 32.9(c)(ii) (petition for review shall contain "[t]he issues which were decided by the trial court and which the defendant wishes to present to the appellate court for review"); *see also State v. Ramirez,* 616 P.2d 924, 928, 126 Ariz. 464, 468, (Ct. App. 1980) (issues may not be raised for first time in petition for review).

In sum, the entirety of Claim 1 is procedurally defaulted.

<u>Claim 2</u>

First, McMonigal alleges the prosecutor committed misconduct by knowingly presenting the false testimony of Leticia Knutson, Maggie Kopp, Whitney Hosler, and Jessica Foley. Second, McMonigal alleges appellate counsel failed to raise this claim.

Third, McMonigal alleges that, in closing arguments, the prosecutor vouched for Kopp and argued facts not in evidence.[1]

With respect to the first portion of this claim, in his PCR petition, McMonigal argued the prosecutor knowingly presented the false testimony of the four victims.[2] (Doc. 1-4 at 32.) The PCR court found all non-IAC claims precluded by Arizona Rule of Criminal Procedure 32.2(a). (Doc. 1-4 at 50.) McMonigal raised this claim in his petition for review. (Doc. 1-5 at 35.) As discussed above with respect to a portion of Claim 1, the Arizona Court of Appeals found this claim procedurally defaulted based on Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.9(c)(1). (*See* Doc. 1-5 at 34-35, 42-43.) Therefore, this portion of the claim is procedurally barred from review in this Court.[3]

With respect to the second portion of this claim, McMonigal did not allege in the PCR proceeding that appellate counsel was ineffective for failing to argue that the prosecutor presented perjured testimony.[4] (*See* Doc. 1-3 at 45 to 1-4 at 47; Doc. 1-5 at 8-38.) Thus, this portion of the claim was not fairly presented in state court. If McMonigal were to return to state court now to litigate this claim, it would be found waived and

---

[1] Respondents failed to acknowledge this portion of the claim, which is raised in paragraph 31(d) of McMonigal's Petition. (Doc. 1-1 at 13.)

[2] In the Reply before this Court, McMonigal suggests he raised part of this claim in Section IV of his appellate brief. The Court disagrees. Section IV alleged that denial of an interview of Hosler violated his confrontation rights. (Doc. 1-3 at 14-18.) The brief cursorily mentions that this may have led to the presentation of perjured testimony and that the prosecutor vouched for Hosler, but that is tangential to the claim raised.

[3] McMonigal argues this claim was not properly raised on appeal because it required evidence from outside the record. Although he cites the fact that there were exhibits attached to his PCR petition, McMonigal does not identify what extra-record evidence was necessary for this claim. Further, Arizona courts have looked at claims of prosecutorial misconduct based on the presentation of perjured testimony on appeal. *See State v. Linden*, 664 P.2d 673, 684, 136 Ariz. 129, 140 (Ct. App. 1983). After review of McMonigal's PCR petition with attached exhibits, the state court determined this claim should have been raised on appeal. Additionally, as discussed below in Claim 3(d), the claim has no merit.

[4] Respondents contend McMonigal raised this claim in the petition for review from denial of his PCR petition, citing Doc. 1-5 at 32 ¶¶ 63-65. The Court disagrees, as those paragraphs allege only IAC of trial counsel.

untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, this IAC claim is technically exhausted but procedurally defaulted.

With respect to the third portion of this claim, on appeal, McMonigal argued the prosecutor's closing argument violated his right to due process, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). (Doc. 1-2 at 50.) The appellate court ruled on the merits of this due process claim. (Doc. 1-3 at 31-34.) Accordingly, the Court will rule on the merits of this portion of Claim 2 based on prosecutorial misconduct during closing argument.

Claim 3

McMonigal alleges he received ineffective assistance of counsel (IAC) at trial when counsel failed to: (a) challenge an unlawful August 9, 2007 search and seizure; (b) call witnesses Ashley Delima and Anice Fraser; (c) challenge amendment of the indictment; (d) challenge perjury by the State's witnesses; and (e) impeach the testimony of Ms. Knutson based on her mental health issues.

McMonigal properly exhausted subparts (a) and (c)-(e) before the state courts. (Doc. 1-3 at 47-48; Doc. 1-4 at 2, 22-23, 40-42, 46; Doc. 1-5 at 22-34, 45-48.) Respondents do not challenge exhaustion as to these subclaims.

Respondents argue that McMonigal failed to fairly present subpart (b) of the claim, as to Anice Fraser, because he did not include this allegation in his petition for review. The Court disagrees. In his PCR petition, McMonigal alleged his counsel was ineffective in failing to call Fraser to testify. (Doc. 1-4 at 6, 44.) He also alleged counsel was ineffective in failing to do the correct paperwork to bring Delima to testify at trial. (Doc. 1-4 at 12, 44, 45.) Liberally construing McMonigal's petition for review, he raised the entirety of this claim in his petition for review. (Doc. 1-5 at 19-22 & n.6.) This

conclusion is in accord with the court of appeals' ruling on the merits of the claim. (Doc. 1-5 at 44, 45, 49.)

The Court will review the entirety of Claim 3 on the merits.

**Cause and Prejudice**

McMonigal argues that the default of any portions of Claims 1 and 2 was caused by the ineffectiveness of appellate counsel. As an initial matter, appellate counsel could not have raised on appeal a claim that he was ineffective. Therefore, IAC of appellate counsel could not operate as cause to excuse the default of McMonigal's claims that appellate counsel was ineffective.

Before ineffectiveness of appellate counsel may be used to establish cause for any procedural default, it must have been presented to the state court as an independent claim. *Murray*, 477 U.S. at 489. McMonigal did not properly exhaust in a PCR petition a claim that appellate counsel was ineffective for failing to fairly present any portions of Claims 1 and 2. (Doc. 1-3 at 45 to 1-4 at 47; Doc. 1-4 at 49 to 1-5 at 6; Doc. 1-5 at 8-38.) Ineffectiveness claims regarding counsel are now foreclosed in state court by Arizona Rule of Criminal Procedure 32.2(a)(3) and 32.4(a). Because the Arizona state courts have not had a fair opportunity to rule on McMonigal's ineffectiveness of appellate counsel claims alleged as cause, and McMonigal may not exhaust these claims now, they are technically exhausted but procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Therefore, McMonigal's allegation of IAC on appeal cannot operate as cause to excuse the default of Claims 1 and 2 unless he establishes cause and prejudice to excuse the default of the appellate IAC claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause can itself be procedurally defaulted). McMonigal has made no argument that there is cause to excuse the default of a claim that appellate counsel was ineffective for failing to fairly present these claims. Therefore, IAC on appeal cannot operate as cause to excuse the default of Claims 1 and 2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Fundamental Miscarriage of Justice**

McMonigal alleged that he is actually innocent of kidnapping Knutson, based on the testimony at trial. To demonstrate a fundamental miscarriage of justice based on factual innocence, a petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To establish the requisite probability, the petitioner must demonstrate with new reliable evidence that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* at 324, 327. McMonigal looks only to trial testimony and does not identify any new evidence of his innocence of the kidnapping charge. Further, McMonigal makes no argument that he is innocent of any of the other 11 counts of which he was convicted. Therefore, McMonigal fails to establish a fundamental miscarriage of justice to overcome the default of Claims 1 and 2.

MERITS

The Court found a portion of Claim 2 and the entirety of Claim 3 were properly exhausted. Those claims are reviewed on the merits.

**Legal Standards for Relief under the AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely

incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**Claim 2**

McMonigal alleges that the prosecutor engaged in misconduct during closing arguments when he vouched for Maggie Kopp and argued facts not in evidence.

The Court does not have a transcript of the closing arguments; therefore, this factual summary is taken from McMonigal's appellate brief and the appellate ruling on this claim. Kopp testified that she was held at McMonigal's trailer and raped. (Doc. 1-2 at 19; Doc. 1-3 at 30.) A person named Johnny came to the window and pulled the wrought-iron bars away so she could crawl out; there was no screen in place; and she weighed 98 pounds. (Doc. 1-2 at 19-20; Doc. 1-3 at 30.) The owner of the trailer (McMonigal's mother) testified that the bars were "melted" to the window frame and could not be removed, and the screen in the photographs had remained there since she purchased the trailer. (Doc. 1-2 at 31-32.)

In closing, McMonigal's counsel argued that Kopp was not credible because the bars could not have been pulled away from the window and the paint on the screen indicated it had been in place on the date Kopp testified to escaping out the window.

- 11 -

(Doc. 1-3 at 31.) In rebuttal argument, the prosecutor discussed a photograph of the window stating, "the bars are not flush to the window, they give. Even Maggie Kopp, thin, would squeeze out of those bars, firmly secured." (*Id.*) He went on to argue the following:

> We have the testimony . . . from the defendant's mom that what happened . . . she herself climbed up to paint the frame, and that she got paint on the bars and paint on the screen, and the screen that she knows was up there when she did the painting was nailed in the frame of the . . . window . . . . Now, the testimony that came from the defendant, and as best as Maria knew, is that these bars were never moved and the screen was never replaced after she painted it, and therefore the defense wants you to believe that Maggie can't be telling the truth that these bars ever moved. That's the defense testimony. If it were true, it would be powerful evidence that Maggie, as was told you in argument, is lying about something. That doesn't make any sense unless everything she is saying isn't true. On the other hand, ladies and gentlemen, if there is evidence from these defense exhibits that these bars were moved after . . . Maria painted it, then that is powerful evidence that Maggie is telling the truth, and that, again, Howard McMonigal's evidence is false, and false because he knows she is telling the truth.

(Doc. 1-2 at 43-44.) The prosecutor went on to explain that the photographs demonstrated the bars were replaced after Maria painted them. (*Id.* at 44.)

> *Arguing Facts Not in Evidence*

Clearly established federal law provides that the appropriate standard of federal habeas review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  Therefore, in order to succeed on this claim, McMonigal must prove not only that the prosecutor's remarks were improper but that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; *see Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

In determining if McMonigal's due process rights were violated by the prosecutor's remarks during closing argument, a reviewing court "must consider the

1
2   probable effect of the prosecutor's [comments] on the jury's ability to judge the evidence
3   fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). During closing argument,
4   "prosecutors are allowed reasonably wide latitude and are free to argue reasonable
5   inferences from the evidence." *United States v. McChristian*, 47 F.3d 1499, 1507 (9th
6   Cir. 1995); *see United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997).
7   Moreover, the Supreme Court has clearly indicated that the state courts have substantial
8   latitude when considering prosecutorial misconduct claims because "constitutional line
9   drawing [in prosecutorial misconduct cases] is necessarily imprecise." *Donnelly*, 416
10  U.S. at 645.

11          The appellate court denied the claim that the prosecutor's argument was based on
12  facts not in evidence:

13          Insofar as McMonigal argues that nothing in the photographs alone
        permits the inference that the bottom of the bars could be pulled away from
14      the window as M. described, we agree. But we do not agree the
        prosecutor's statement that the bars "give" was misconduct warranting a
15      new trial. First, before stating the bars "give," the prosecutor described the
        bars as not being "flush" with the window, then immediately stated M.
16      could squeeze through the "firmly secured" bars. Thus, it is not entirely
        clear that, by using the word "give," the prosecutor intended to suggest the
17      photographs permitted an inference the bars could be bent or pulled away
        from the window. Read in context, it appears equally likely the prosecutor,
18      albeit inartfully, used the word "give" in reference to the gap between the
        bottom of the bars and the window. But, even if the prosecutor meant to
19      suggest the bars could be pulled away from the window, the state presented
        evidence McMonigal's brother did precisely that. Such evidence certainly
20      would provide sufficient factual support for the prosecutor to argue in good
        faith that the bars had "give" to them.

21          . . . .

22          Finally, we find no merit in McMonigal's argument that the
        prosecutor improperly suggested the bars had been "tampered with" by
23      someone . . . . The prosecutor argued the photographs permitted the jury to
        conclude the bars had been moved or altered after B. had painted them
24      because they showed paint missing from around the bolts connecting the
        bars to the trailer. He additionally suggested the screen depicted in the
25      photographs had been added after B. had painted the trailer because there
        was no paint on the screen. The photographs support these inferences, and
26      the prosecutor in no way suggested these changes had been made at the
        behest of the defense to discredit M.'s testimony.
27

28

                                        - 13 -

1

2

(Doc. 1-3 at 33-34.) The court concluded that the argument was not improper and, if it was, it did not rise to a due process violation. (*Id.* at 33.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

The appellate court's interpretation of the prosecutor's use of the term "give" is thorough and well-reasoned. As the Supreme Court has directed, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *DeChristoforo*, 416 U.S. at 647. Further, the prosecutor did not offer his personal opinion of McMonigal's guilt or argue facts not in evidence, as charged by McMonigal. Rather, in responding to defense counsel's closing argument, the prosecutor drew reasonable inferences from the photographs to argue that Kopp's testimony was credible and the evidence did not support McMonigal's interpretation. The prosecutor's remarks were a "fair response" to defense counsel's arguments. *See McChristian*, 47 F.3d at 1506. As the Supreme Court has held, a prosecutor "may prosecute with earnestness and vigor - indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). The prosecutor's arguments were not foul and the appellate court's denial of this claim was not an objectively unreasonable application of Supreme Court law.

20

*Vouching*

21

22

23

24

25

26

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.1993). Habeas relief on a claim of prosecutorial vouching is available only if the state court unreasonably determined that the vouching did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

27

28

The appellate court summarily rejected the idea that the prosecutor's closing argument constituted vouching, because he did not place the prestige of the government behind Kopp or argue that information unknown to the jury supported her testimony. (Doc. 1-3 at 31 n.1.) Review of the closing argument, as quoted above, fully supports this ruling. Contrary to McMonigal's argument (Doc. 1-1 at 13 ¶ 31(d)), the prosecutor did not state "Maggie is telling the truth." To counter arguments made by the defense, the prosecutor drew inferences from admitted evidence to support the credibility of Kopp's testimony. Because there is no basis to find the prosecutor vouched for Kopp, the appellate court's ruling was not contrary to Supreme Court law.

**Claim 3**

Standard for IAC claims

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A failure to raise untenable issues on appeal does not fall below the *Strickland* standard." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

1  prejudice . . . that course should be followed"). A petitioner must affirmatively prove

2  prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable

3  probability that, but for counsel's unprofessional errors, the result of the proceeding

4  would have been different. A reasonable probability is a probability sufficient to

5  undermine confidence in the outcome." *Id.* at 694.

6      Claim 3(a)

7      McMonigal alleges trial counsel was ineffective for failing to challenge the

8  August 9, 2007 search of his residence. McMonigal contends the police entered his

9  residence before obtaining a search warrant, at which time they discovered three people

10  inside. Further, he argues the search warrant was only as to the vehicles and the persons

11  present, not his residence; however, the police searched his residence.

12      The appellate court held that the scope of the warrant was exceeded; however,

13  McMonigal failed to establish prejudice. (Doc. 1-5 at 46-47.) In particular, the court

14  found McMonigal failed to show what evidence would have been suppressed if counsel

15  had filed a motion. (*Id.* at 47.)

16      First, even if the police entered his home prior to obtaining a warrant, McMonigal

17  has not established any prejudice arising from this entry. He alleges three people were

18  discovered inside, but he does not contend this evidence was used against him in any

19  way. Although it may have been mentioned in seeking the search warrant, there is no

20  reason to believe this influenced the issuance of the warrant. Most critically, if counsel

21  had raised this argument, there is not a reasonable probability any evidence would have

22  been suppressed or the outcome of his trial would have been different.

23      Second, the Court finds the officers did not exceed the scope of the search

24  warrant.[5] After the judge found probable cause for the warrant, the officer read the

25

26  ───────────────

27      [5] McMonigal points out that Respondents based their Answer on an October 2007 search warrant (Doc. 19 at 24-25 & Ex. J), not the August 2007 warrant that McMonigal challenges. McMonigal submitted the telephonic warrant that is the subject of this claim and the Court relies upon that document for its analysis.

28

- 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

warrant into the record. (Doc. 26 at 2-4.) It included the following, "I am satisfied that there is probable cause to believe that on the premises known as 2640 South Cottonwood Lane, Number 1 in the County of Pima, State of Arizona there is now possessed, or concealed certain property, or things described as . . . " (*Id.* at 4-5.) In making his argument, McMonigal relies on the subsequent language, which directs the police to "make a search of the person(s) and/or vehicles listed . . . ." (*Id.* at 5.) Because the judge had already found probable cause as to the residence, the subsequent language appears to be nothing more than a typographical error. At a minimum, it was not ineffective for counsel not to challenge the warrant because it clearly identified the address of McMonigal's residence in the probable cause finding. The appellate court's denial of this claim was not an objectively unreasonable application of *Strickland*.

Claim 3(b)

McMonigal argues trial counsel was ineffective for not calling Anice Fraser and Ashly Delima to testify at trial.

*Fraser*

McMonigal argues that Fraser had no criminal record, and was willing and able to testify. At trial, Hosler testified that Fraser was her best friend and witnessed her kidnapping. McMonigal alleges that Fraser refuted this testimony in a pre-trial interview. However, at the time of the PCR proceeding, Fraser had moved and McMonigal did not obtain an affidavit from her to substantiate her alleged willingness to testify or the testimony she would have given.

With respect to Fraser, the PCR court and the appellate court held that McMonigal failed to rebut the presumption that counsel's decision was a strategic one. (Doc. 1-5 at 4, 44.) Similarly, McMonigal presents no argument to this Court to establish that this finding was an objectively unreasonable application of *Strickland*.

*Delima*

In conjunction with his PCR petition, McMonigal submitted an affidavit from Delima avowing that several of McMonigal's victims had lied at trial and the assaults to which they testified had not occurred. (Doc. 1-5 at 45; Doc. 1-7 at 46.) After the PCR court denied this claim, the appellate court remanded it for a hearing. (Doc. 1-5 at 45.)

After the hearing, the PCR court concluded that counsel made a strategic decision not to call Delima and that the decision was reasonable. (Doc. 1-7 at 24.) The Court relied on testimony from counsel that she did not call Delima based on her demeanor at a pre-trial interview, her assessment of Delima's ability to withstand cross-examination, and that her testimony would have corroborated the incriminating testimony of one of the victims. (*Id.*) The court also noted that Delima was an admitted daily methamphetamine user and had a past sexual relationship with McMonigal. (*Id.*)

The court further concluded that McMonigal failed to establish prejudice – that he would not have been convicted as to any charge if she had testified. The PCR court summarized Delima's testimony: she never witnessed McMonigal mistreat Foley; she never witnessed McMonigal sexually assault Kopp but Kopp told her that McMonigal raped her; she did not witness McMonigal sexually assault Knutson although she had heard rumors to that effect; and the victims could have been at McMonigal's home at times she was not present. (*Id.* at 25.) In refuting McMonigal's claim that Delima's testimony would have been particularly damaging to Foley's credibility, the PCR held:

> Ms. Foley's trial testimony indicated that she specifically did not tell Ms. Delima about the sexual assault by Petitioner because Ms. Foley knew Ms. Delima was in a relationship with Petitioner. Additionally, Ms. Foley testified that Ms. Delima had been in the shower when Petitioner approached her prior to the sexual assault. Overall, Ms. Delima's testimony would not have been enough to change the outcome of the trial, and thus Petitioner was not prejudiced as a result of her failure to testify.

(*Id.*) The Court concluded that the absence of Delima's testimony at trial merely had "some conceivable effect" on the outcome, which does not meet the *Strickland* standard. (*Id.*) The Court of Appeals affirmed the ruling. (Doc. 1-7 at 44-47.)

First, the Court reviews the state courts' factual finding that trial counsel made a strategic decision and assesses whether that finding was objectively unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing 28 U.S.C. § 2254(d)(2)). Counsel testified to several rational reasons she did not call Delima as a witness, relating to her assessment of Delima's effectiveness as a witness and the possible negative implications of her testimony. The only evidence to suggest it was not a strategic decision is that counsel made an error in the writ she initially drafted to have Delima brought to court. The PCR court determined that counsel could easily have corrected the writ but chose not to because she did not want to call Delima. (Doc. 1-7 at 24.) The PCR court's determination that counsel made a strategic decision was not objectively unreasonable.

Next, the Court must review the objective reasonableness of the state courts' ruling that counsel's strategic decision fell within reasonable professional judgment under *Strickland*. *See Wood*, 558 U.S. at 302-03 & n.3. McMonigal has presented no evidence that counsel's decision was unreasonable, no opinion from another attorney or prevailing norms from attorney guidelines. *See Matylinsky v. Budge*, 577 F.3d 1083, 1092 (9th Cir. 2009) (finding that defendant presented no evidence of unreasonableness that could satisfy "heavy burden" of proving that trial strategy was deficient). Rather, McMonigal disagrees with the decision and has established that Delima's testimony might have been helpful as to some of the charges. However, counsel was concerned that any benefit could be countered by Delima corroborating some of the victim testimony. Further, counsel had valid concerns about whether Delima would present well as a witness. Overall, it was reasonable for counsel not to call Delima as a witness. The state courts' denial of this claim was not an objectively unreasonable application of *Strickland*.

Further, because Delima's testimony would have consisted primarily of stating only that she did not witness McMonigal engaging in sexual assaults or kidnappings, there is not a reasonable probability the outcome of the proceeding would have been different if she had testified. Because McMonigal has failed to establish either prong

- 19 -

under *Strickland*, it was not objectively unreasonable for the PCR court to deny this claim. Claim 3(c)

McMonigal alleges trial counsel was ineffective in failing to object to improper amendments of the indictment regarding charges involving victim Jessica Foley.

The prosecutor moved to dismiss two counts of sexual assault charged as having occurred in September 2007, because during deposition Foley testified no assault occurred during that time period. (Doc. 19, Ex. I at 73.) Trial counsel objected because she wanted to point out to the jury the victim's inconsistent statements and the fact that McMonigal was indicted based on her withdrawn statements. (*Id.* at 73-75.) When the judge assured her she could use this evidence to impeach Foley, counsel did not object to the dismissals. (*Id.* at 76.) The prosecutor further moved to amend a count of sexual assault and a count of kidnapping that were charged as occurring in March 2007 to reflect that they occurred in May 2007. (*Id.* at 77.) The prosecutor stated that the date confusion was created by the interviewing detective – Foley had stated that the incidents occurred five months prior to the October interview and the detective erroneously listed the assaults as occurring in March. (*Id.*) Defense counsel strongly objected, arguing that the detective was not confused; rather, the issue was that Foley had substantially recanted her statements and these changes would prejudice the defense's ability to impeach her. (*Id.* at 79-80.) The court granted the amendment, assuring counsel that she could use those statements of Foley and the detective to impeach their credibility. (*Id.* at 80; Ex. N at 7.) Finally, the prosecutor moved to amend the indictment as to five July 2007 charges (sexual assault and kidnapping) involving victim Foley. The indictment had charged two separate incidents involving Foley, one in early July and one in late July. (Doc. 19, Ex. N at 7-8.) During deposition, Foley stated there was only one event in July. Therefore, the prosecutor moved to dismiss three of the charges, and to amend two of them (one sexual assault and one kidnapping charge) to reflect that they occurred during the month of July, not on a specific date. (*Id.*) Counsel did not object to the amendments, with the

understanding that she would be allowed to point out the change in allegations during trial. (*Id.* at 9.)

The PCR court found the amendments were done solely to change the date of the offenses, which was proper; therefore, McMonigal was not prejudiced by counsel's actions. (Doc. 1-5 at 3.) The appellate court held that McMonigal failed to identify how the amendments prejudiced him or impeded his ability to defend himself. (Doc. 1-5 at 45-46.)

McMonigal alleges counsel was ineffective in that she failed to object to the amendments as constructive not technical. In particular, he contends counsel failed to alert the court that the victim's (proposed) trial testimony on which he was ultimately convicted was entirely different than the factual basis for his grand jury indictment. McMonigal contends he was prejudiced by this failure because it violated his right to indictment by a grand jury; his right to be informed of the charges against him; and his right to protection against double jeopardy.[6]

First, McMonigal argues that the amendments were constructive not technical. An Arizona grand jury indictment may be amended only "to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). A defect is considered formal and subject to amendment if it does not change the nature of the offense nor

---

[6] McMonigal argues counsel's deficient performance was demonstrated by something that happened at trial. Counsel began to ask Foley if she knew that McMonigal had been indicted when the trial court interrupted and called counsel to the bench. (Doc. 19, Ex. K at 186.) The court stated that Foley was not the proper avenue to introduce evidence of indictments but he would take judicial notice of indictments if she requested that he do so. (*Id.* at 186-87.) The judge instructed counsel that requesting judicial notice was properly done "before you argue the case." (*Id.* at 187.)

McMonigal reads this portion of the transcript as the court instructing counsel that she should have addressed the indictments prior to trial. That is not how this Court reads the transcript. The trial court was informing counsel that if she wanted the court to take judicial notice of the indictments she should make a request before the beginning of closing arguments of the trial. The Court does not know if this was done; regardless, McMonigal is not arguing that failing to do so was ineffective. Further, at the time the amendments were sought, counsel confirmed that the court would allow her to introduce the original indictments at trial. Therefore, the Court finds this argument does not demonstrate that counsel was ineffective with regard to the amendments.

1   prejudice the defendant. *State v. Barber*, 653 P.2d 29, 34, 133 Ariz. 572, 577 (Ct. App.

2   1982). A court evaluates whether the defendant had notice of the charges against him and

3   if acquittal of the amended charge would provide a double jeopardy defense to the

4   original charge. *Id.*

5          The relevant counts in the original indictment were as follows:

6          COUNT NINETEEN: (SEXUAL ASSAULT, A CLASS TWO FELONY)

7          During the month of March, 2007, HOWARD NED MCMONIGAL, III
           committed sexual assault by intentionally or knowingly engaging in an act

8          of sexual intercourse with JESSICA FOLEY, a person fifteen years of age
           or older, without her consent, by inserting his penis into the victim's vulva,

9          in violation of . . .

10         COUNT TWENTY: (KIDNAPPING, A CLASS TWO FELONY)
           During the month of March, 2007, HOWARD NED MCMONIGAL, III

11         kidnapped JESSICA FOLEY, with the intent to inflict death, physical
           injury or a sexual offense on her, or to otherwise aid in the commission of a

12         felony or to place her or a third person in reasonable apprehension of
           imminent physical injury to her or to a third person, in violation of . . .

13
           COUNT TWENTY-ONE: (SEXUAL ASSAULT, A CLASS TWO
14         FELONY)
           On or about the 1ˢᵗ day of July, 2007 through the 7ᵗʰ day of July, 2007,

15         HOWARD NED MCMONIGAL, III committed sexual assault by
           intentionally or knowingly engaging in an act of sexual intercourse with

16         JESSICA FOLEY, a person fifteen years of age or older, without her
           consent, by penetrating the victim's vulva with his penis and/or other

17         objects, in violation of . . .

18               . . . .

19         COUNT TWENTY-THREE: (KIDNAPPING, A CLASS TWO FELONY)
           On or about the 22ⁿᵈ day of July, 2007 through the 28ᵗʰ day of July, 2007,

20         HOWARD NED MCMONIGAL, III kidnapped JESSICA FOLEY, with
           the intent to inflict death, physical injury or a sexual offense on her, or to

21         otherwise aid in the commission of a felony or to place her or a third person
           in reasonable apprehension of imminent physical injury to her or to a third

22         person, in violation of . . .

23   (Doc. 19, Ex. O.) Counts 19 and 20 were amended to change the date from March to May

24   2007. Counts 21 and 23 were amended to change the date of occurrence to July 2007.

25   Amendments for date changes to conform to the evidence generally are considered

26   formal allowable amendments if the defendant is not prejudiced. *See State v. Bruce*, 610

27   P.2d 55, 57, 125 Ariz. 421, 423 (1980).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McMonigal argues only very generally that he did not have sufficient notice but does not allege that his ability to prepare and present his defense actually was impacted by the amendments. The variances on which McMonigal focuses are specific facts surrounding the sexual assaults and kidnappings (presented to the grand jury) rather than the actual elements as charged in the indictment. McMonigal was on notice of the alleged victim and the criminal charges (including the specific sexual acts alleged). He defended against these claims by impeaching Foley's credibility based on her inconsistent statements. That defense was not undermined by the amendments. *See State v. Jones*, 937 P.2d 1182, 1192, 188 Ariz. 534, 544 (Ct. App. 1996) (finding no prejudice from amendments when only defense was that the victim was lying, which the jury rejected), *overturned on other grounds by State v. Ferrero*, 274 P.3d 509, 229 Ariz. 239 (2012).

A double jeopardy defense is not limited to the four corners of the indictment but includes the record as a whole. *See Bruce*, 610 P.2d at 57-58, 125 Ariz. at 423-24. Viewing the record in entirety, if McMonigal had been acquitted on any of these charges, the acquittal would have provided a defense to trial on the charges in the original indictment.

Finally, McMonigal argues that counsel's failure caused prejudice because it led to a violation of his Fifth Amendment right to indictment by a grand jury. Indictment by grand jury, pursuant to the Fifth Amendment, is not one of the due process guarantees applicable to state criminal defendants. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

In sum, McMonigal has not established that the amendments were improper. Therefore, counsel was not ineffective for failing to object to the amendments as constructive rather than technical. Further, McMonigal has not established that he was actually prejudiced by the amendment as required for an IAC claim.[7]

---

[7] McMonigal argued counsel's errors were prejudicial *per se*. However, McMonigal must affirmatively establish prejudice arising from counsel's actions or omissions. There are narrow exceptions to this rule, not present here, when a criminal

1

2    Claim 3(d)

3        McMonigal alleges trial counsel was ineffective in failing to object to perjured

4    testimony and effectively cross-examine witnesses. The PCR court found that counsel

5    conducted extensive cross-examination highlighting inconsistent statements by the

6    State's witnesses, impeaching their credibility. (Doc. 1-5 at 3.) Because credibility was

7    properly left to the province of the jury, the court determined McMonigal failed to

8    establish either prong of *Strickland*. (*Id.*) The appellate court rejected this claim finding it

9    could not evaluate counsel's performance because McMonigal failed to adequately

10   support his allegations. (Doc. 1-5 at 47-48.)

11       First, in the Petition, McMonigal repeats that there can be "little doubt" that the

12   prosecutor knowingly used perjured testimony of Knutson, Kopp, Hosler, and Foley.

13   (Doc. 1-1 at 9 ¶ 17; 13 ¶ 30; 16 ¶ 53.) However, what he relies upon are numerous

14   inconsistent statements of the witnesses. (Doc. 1-1 at 7-17.) There is no evidence the

15   prosecutor knowingly presented perjured testimony nor that counsel should have known

16   and objected to such testimony. *See State v. Ferrari*, 541 P.2d 921, 931, 112 Ariz. 324,

17   334 (1975) (finding that prosecution is not precluded from presenting witness who made

18   inconsistent pretrial statements as credibility determination is left to the jury); *State v.*

19   *Linden*, 664 P.2d 673, 684, 136 Ariz. 129, 140 (Ct. App. 1983) (same); *State v. Jordan*,

20   No. 2 CA-CR 2012-0134-PR, 2012 WL 1965869, at *2 (Ariz. Ct. App. June 1, 2012)

21   (holding that inconsistent statements by government witnesses does not establish

22   knowing use of perjury). McMonigal fails to establish either prong of *Strickland* with

23   respect to the alleged perjured testimony.

24       Second, McMonigal provides very limited allegations regarding the deficiencies of

25   counsel on cross-examination. He alleges that counsel's "attempted impeachment . . . was

26   so far below prevailing norms that she had to be repeatedly interrupted and instructed by

27   the court. At one point she was 'sanctioned' by the court and 'serious[ly] admonish[ed] . .

28   defendant has no counsel during a critical stage of trial. *See United States v. Cronic*, 466
     U.S. 648, 658-59 (1984).

- 24 -

. for the possible prejudicial affect her questions could have on her client." (Doc. 1-1 at 21 ¶ 45.) This allegation is contradicted by the PCR court finding that counsel conducted extensive cross-examination and impeached the State's witnesses.

McMonigal fails to establish that counsel's lack of cross-examination as to every inconsistency in each witness's multiple statements was not a strategic decision. For example, with respect to the charges involving victim Kopp, McMonigal notes that the defense presented by counsel – that Kopp lied about exiting McMonigal's trailer through the window – demonstrated his innocence even though it did not involve identifying every inconsistency in her statements. (*Id.* at 13 ¶ 31.) Further, McMonigal identifies inconsistencies in Hosler's statements about sexual abuse that counsel did not raise during trial. (Doc. 1-1 at 15.) However, McMonigal was indicted for kidnapping Hosler not sexually abusing her (s*ee* Doc. 19, Ex. O); therefore, counsel could reasonably have limited cross-examination to topics relevant to that charge. Finally, McMonigal acknowledges that counsel identified various inconsistencies in witness testimony during cross-examination. (*See* Doc. 1-1 at 8-9 ¶ 16; 16 ¶ 52.)

Deficient performance requires showing that counsel's errors were so serious "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. 687. McMonigal has not satisfied this burden because he has failed to overcome the presumption that counsel's actions were sound trial strategy. *Id.* at 689-90. Although counsel may not have been perfect, the state court's finding that her actions were not below professional norms was not objectively unreasonable. *See Dows v. Wood*, 211 F.3d 480, 485 (9th Cir.  2000) (counsel's representation is not required to be "flawless or to the highest degree of skill.")

Further, McMonigal has not argued that he was actually prejudiced by counsel's conduct of cross-examination. In many respects, McMonigal is arguing there was not sufficient evidence for him to have been found guilty, in light of the victims' testimony. However, that claim is not before this Court.

The state courts' denial of this claim was not an objectively unreasonable application of *Strickland*.

Claim 3(e)

McMonigal alleges trial counsel was ineffective for failing to impeach Knutson based on her mental health issues:

> Counsel also failed to raise, address, or seek expert testimony with regards to Ms. Knutson's severe mental illnesses. . . . And how being diagnosed as schizoaffective and having borderline personality disorder would relate to her uncorroborated and inconsistent allegations, even prior to trial. Nor did counsel pursue the issue of the prosecution's illegal influencing of Ms. Knutson's testimony. . . . Or how easily one with her mental impairments could be so easily influenced, as noted by her favorable answers to which ever party was asking.

(Doc. 1-1 at 21 ¶ 44.) McMonigal states that Ms. Knutson was diagnosed with these mental illnesses in 2006 and is prescribed anti-depressant and anti-psychotic medications. (*Id.* at 8 ¶ 9.)

The appellate court concluded that McMonigal had not identified any reasons to conclude that counsel's decision – not to use this evidence in questioning Knutson – was anything but tactical. (Doc. 1-5 at 48.) Thus, the court found counsel's conduct did not fall below professional norms. (*Id.*)

McMonigal fails to establish that he was actually prejudiced by counsel not using this information. He has not demonstrated a reasonable probability that if counsel had explored Knutson's mental health issues he would not have been convicted of any charges. McMonigal alleges that Knutson's mental health issues caused her to make inconsistent statements and to respond favorably to questions asked by either party. Review of counsel's cross-examination of Knutson reveals her many inconsistencies and equivocal answers to questions. (Doc. 19, Ex. P at 128-42, 147-50, 153-60; Ex. Q at 5-41.) Thus, the jury was presented with the information McMonigal contends was important to evaluate Knutson's credibility. Counsel also asked Knutson about her lengthy history of drug use. (Doc. 19, Ex. P at 150-52.) McMonigal fails to establish prejudice. The appellate court's denial of this claim was not objectively unreasonable.

1

## **RECOMMENDATION**

2

Claim 1 and Claim 2, in part, are procedurally defaulted. McMonigal has not

3

established cause and prejudice or a fundamental miscarriage of justice to overcome the

4

defaults. The remainder of Claim 2 and Claim 3 are without merit. Based on the

5

foregoing, the Magistrate Judge recommends the District Court DISMISS the Petition for

6

Writ of Habeas Corpus.

7

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

8

written objections within fourteen days of being served with a copy of the Report and

9

Recommendation. A party may respond to the other party's objections within fourteen

10

days. No reply brief shall be filed on objections unless leave is granted by the district

11

court. If objections are not timely filed, they may be deemed waived. If objections are

12

filed, the parties should use the following case number: **CV-15-0134-TUC-RCC**.

13

Dated this 15th day of June, 2016.

14

15

16

17

18

D. Thomas Ferraro
United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28